**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 19-cr-20814-2-BLOOM**

UNITED STATES OF AMERICA

v.

RAYVEEN KEEAUNA HICKS,

Defendant.
______________________________________/

**ORDER ON MOTION TO DISMISS**

**THIS CAUSE** is before the Court on Defendant Rayveen Keeauna Hicks' ("Defendant") Motion to Dismiss Indictment for Violation of Speedy Trial, ECF No. [109] ("Motion"). The United States of America (the "Government") filed a Response in Opposition, ECF No. [114], and Defendant filed a Reply, ECF No. [115]. The Court has reviewed the Motion, the opposing and supporting briefs, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, Defendant's Motion is granted.

## I. FACTUAL BACKGROUND

In December 2014, law enforcement arrested two individuals—later identified as Defendant and Erica Hicks ("E. Hicks")—at the Macy's Department Store in Aventura Mall, alleging that the two attempted to use fraudulent credit cards to make purchases. ECF No. [109] at 1; ECF No. [114] at 2. The law enforcement officers who responded to the scene located a white Jaguar that the two women drove to the mall parking lot. ECF No. [109] at 2; ECF No. [114] at 2.

Later that month, law enforcement obtained a search warrant for the car, which was registered to Defendant's grandmother. ECF No. [109] at 2; ECF No. [114] at 2. Inside the car,

law enforcement allegedly found multiple credit cards in different names and mail bearing different addresses. ECF No. [109] at 2; ECF No. [114] at 2.

In January 2015, law enforcement executed a Florida state search warrant on Defendant and E. Hicks' home in Miami Gardens, Florida. ECF No. [109] at 2; ECF No. [114] at 2. In the home, law enforcement seized numerous papers allegedly containing personally identifying information and bearing Defendant's fingerprints. ECF No. [109] at 2; ECF No. [114] at 2–3. That month, the State dropped all charges against Defendant in connection with the December 2014 arrest. ECF No. [109] at 2. The federal Indictment against Defendant was ultimately filed in December 2019. ECF No. [1]. In January 2020, the Government filed a Superseding Indictment, charging Defendant with (i) one count of Conspiracy to Commit Access Device Fraud in violation of 18 U.S.C. § 1029(b)(2), (ii) three counts of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1), (iii) one count of Possession of Fifteen or More Unauthorized Access Devices in violation of 18 U.S.C. § 1029(a)(3), and (iv) two counts of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1). ECF No. [7].

Defendant and the Government characterize the period between January 2015 and December 2019 differently. Defendant contends that after sending grand jury subpoenas for multiple parties seeking relevant information and returning fingerprint analyses through July 2015, the Government did nothing more to investigate or charge Defendant until December 2019. ECF No. [109] at 3. The Government contends that it searched diligently for Defendant but was not able to generate leads that led to Defendant's arrest until the case was referred to a United States Secret Service fugitive task force in 2026. ECF No. [114] at 3.

Defendant and the Government also characterize the period between the Indictment in December 2019 and Defendant's arrest in July 2026 differently. Defendant alleges that after the

Government filed a Superseding Indictment in January 2020, a sealed arrest warrant was issued for Defendant. ECF No. [109] at 3. The warrant listed Defendant's address, along with a second address at Defendant's grandmother's house. *Id.* at 3–4. Later that month, the case was put into fugitive status "without further explanation." *Id.* at 4.

The Government points to law enforcement's efforts to conduct surveillance on Defendant's "family home." ECF No. [114] at 3. It points to 22 different instances of surveillance spanning December 2020 to December 2025 during which law enforcement surveilled the family home and distributed "Wanted" flyers to local law enforcement agencies. *Id.* at 3–4. Furthermore, in July 2020, law enforcement searched records on Sunbiz but did not locate any information pertaining to Defendant. *Id.* at 4. In June 2022, a record search revealed a business registered to a similarly-named individual; the Government contacted the management office of the business address, which advised that there was no record of Defendant residing in the building. *Id.* at 4–5. Nonetheless, law enforcement conducted surveillance in the parking lot area of the apartment building but did not see any sign of Defendant. *Id.* at 5. Moreover, the Government alleges that different law enforcement agencies conducted database checks on Defendant on at least 13 occasions between April 2020 and April 2026. *Id*. Also, law enforcement searched to no avail for social media accounts associated with Defendant in July 2023; it was only in June 2026 that law enforcement discovered recent activity on Defendant's Facebook account. *Id*. In addition, in July 2023, law enforcement conducted a search of wage and earnings records but found nothing pertinent to Defendant. *Id.* A similar search in August 2025 did not yield any helpful information. *Id*. Between July 2024 and March 2025, law enforcement also conducted open-source searches for Defendant, searched utility records, and searched the records of the Florida Department of

Highway Safety and Motor Vehicles. *Id.* at 6. Additional efforts took place in October 2021 and June 2026. *Id*. at 6–7.

Defendant was ultimately arrested in July 2026. ECF No. [109] at 4; ECF No. [114] at 7.

In August 2026, Defendant filed the instant Motion, arguing that the Government has violated her right to a speedy trial under the Sixth Amendment given (1) the six-and-a-half-year post-indictment delay, (2) the Government's failure to make a serious, diligent effort to arrest Defendant, (3) Defendant's assertion of her speedy trial right, and (4) the prejudice experienced by Defendant as a result of the delay. ECF No. [109]. Defendant also asserts that Federal Rule of Criminal Procedure 48(b) supports dismissal. *Id*.

The Government responds that the *length* of the delay does not weigh heavily against the Government unless the *reason* for the delay weighs against the Government. ECF No. [114] at 7–13. Moreover, Defendant's assertion of her speedy trial right does not weigh heavily against the Government, as indirect evidence indicates that Defendant knew about the Indictment. *Id.* at 14. Finally, Defendant has failed to show actual prejudice because of the delay. *Id.* at 14–15. Federal Rule of Criminal Procedure 48(b), the Government says, does not support dismissal either. *Id.* at 16–17.

Defendant replies that the Government applies the wrong body of law in an attempt to avoid weighing its five-year delay in charging Defendant. ECF No. [115] at 1–3. Furthermore, the Government is responsible for the delay in locating and apprehending Defendant. *Id.* at 3–8. Finally, Defendant timely asserted her right to a speedy trial, and while prejudice is presumed, Defendant can also show significant prejudice caused by the Government's delay. *Id.* at 8–11.

## II. LEGAL STANDARD

An indictment is "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). For an indictment to be valid, it must "(1) present[ ] the essential elements of the charged offense, (2) notif[y] the accused of the charges to be defended against, and (3) enable[ ] the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Schmitz*, 634 F.3d 1247, 1259 (11th Cir. 2011) (quoting *United States v. Jordan*, 582 F.3d 1239, 1245 (11th Cir. 2009)).

A defendant may challenge an indictment on various grounds, including failure to state an offense, lack of jurisdiction, constitutional reasons, double jeopardy, improper composition of the grand jury, and certain types of prosecutorial misconduct. *See United States v. Kaley*, 677 F.3d 1316, 1325 (11th Cir. 2012); Fed. R. Crim. P. 12(b). On a motion to dismiss the indictment, "[t]he indictment's allegations are assumed to be true and are viewed in the light most favorable to the government." *United States v. Rodriguez*, 635 F. Supp. 3d 1351, 1354-55 (S.D. Fla. 2022). "[A] court ruling on a motion to dismiss may not look beyond the four corners of the indictment, nor may it properly dismiss an indictment for insufficient evidence." *United States v. Baxter*, 579 F. App'x 703, 706 (11th Cir. 2014). Fundamentally, Federal Rule of Criminal Procedure 12(b) allows a Defendant to move to dismiss an indictment where the indictment is insufficient as a matter of law. *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987) (citing *United States v. Korn*, 557 F.2d 1089, 1090–91 (5th Cir. 1977) and *United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1082 (5th Cir. 1978)).

Under Rule 48(b), the court may dismiss an indictment "if unnecessary delay occurs in: (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a

defendant to trial." Fed. R. Crim. P. 48(b). The rule "vests much discretion in the trial court, and dismissal is mandatory only if the defendant's constitutional rights have been violated." *United States v. Butler*, 792 F.2d 1528, 1533 (11th Cir. 1986).

## III. DISCUSSION

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. Const. amend. VI. The Sixth Amendment right to a speedy trial attaches when the defendant is indicted, arrested, or otherwise officially accused and continues until the date of trial. *United States v. Gonzalez*, 671 F.2d 441, 444 (11th Cir. 1982). As a result, the Government "has a 'constitutional duty to make a diligent, good-faith effort' to locate and apprehend a defendant and bring the defendant to trial." *United States v. Bagga*, 782 F.2d 1541, 1543 (11th Cir. 1986) (quoting *Smith v. Hooey*, 393 U.S. 374, 383 (1969)).

When assessing alleged violations of the Sixth Amendment right to a speedy trial, the United States Supreme Court has adopted a balancing test according to which the prosecution's and defendant's actions are weighed. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Under the *Barker* test, courts are to assess the following factors in deciding whether a speedy trial violation has occurred: (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. *Id.* at 530–32. "[T]hese factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." *Id.* at 533 (alteration added).

Importantly, the Eleventh Circuit has been clear that "[t]he Sixth Amendment has not been applied to pre-indictment delay." *United States v. Gayden*, 977 F.3d 1146, 1150 n.1 (11th Cir. 2020) (citing *United States v. Marion*, 404 U.S. 307, 315 (1971)). Indeed, each time that the Eleventh Circuit or Supreme Court has confronted the issue, they have affirmed that "[o]nly

pretrial delay following a person's arrest, charge, or indictment is relevant to whether the Speedy Trial Clause of the Sixth Amendment is triggered." *United States v. Ingram*, 446 F.3d 1332, 1339 (11th Cir. 2006) (citations omitted); *United States v. Lovasco*, 431 U.S. 783, 788–89 (1977) (holding pre-indictment delay is "wholly irrelevant" to whether the Sixth Amendment speedy trial analysis is engaged) (quoting *United States v. Marion*, 404 U.S. 307, 320 (1971)). That said, once the Sixth Amendment analysis is triggered, the Eleventh Circuit has indicated that "it is appropriate to consider inordinate pre-indictment delay in determining how heavily post-indictment delay weighs against the Government." *United States v. Ingram*, 446 F.3d 1332, 1339 (11th Cir. 2006) (citations omitted). With this legal framework in mind, the Court turns to an application of the *Barker* factors to this case.

**A. First *Barker* Factor**

This first *Barker* factor—the length of the delay—requires the Court to consider whether the delay is long enough to trigger analysis of the remaining *Barker* factors. *Doggett v. United States*, 505 U.S. 647, 651–52 (1992) (citing *Barker*, 407 U.S. at 530–31). A delay is deemed long enough when it crosses the threshold between "ordinary" and "presumptively prejudicial." *Id*. "[I]f a delay is not presumptively prejudicial, a defendant's Sixth Amendment right is not deemed violated and the remaining factors need not be considered." *United States v. Brown*, 169 F.3d 344, 348 (6th Cir. 1999) (alteration added; citation omitted). While the "length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case," *Barker*, 407 U.S. at 530–31, "delays exceeding one year are generally found to be 'presumptively prejudicial.'" *United States v. Clark*, 83 F.3d 1350, 1352 (11th Cir. 1996) (citation omitted).

Here, the Government readily concedes that the six-and-a-half-year delay between the Indictment and Defendant's arrest surpasses the one-year threshold. ECF No. [114] at 8. As a

result, the Court finds the delay is presumptively prejudicial, and consideration of the remaining *Barker* factors is warranted.

The parties disagree, however, on how heavily this delay weighs against the Government. Defendant contends that, when combined with the pre-indictment delay, the 12-year total delay in this case weighs heavily against the Government. ECF No. [109] at 7. The Government responds that the delay does not weigh heavily against it, as the statute of limitations is not at issue, Defendant cannot point to evidence that the pre-trial delay caused her prejudice, and Defendant cannot show that the Government intentionally delayed prosecuting the case for a tactical advantage. ECF No. [114] at 9–11.

Because the explanations raised in this dispute touch on issues pertinent to the Government's reasons for the delay, the Court considers these matters in its analysis of the second *Barker* factor. *United States v. Vargas*, 97 F.4th 1277, 1290 (11th Cir. 2024) ("[I]t is particularly necessary to examine the length of the delay alongside the reasons behind it because there were different forces at work for different parts of the delay."). The Court pauses only to note that it rejects the Government's attempts to confuse the required Sixth Amendment analysis with frameworks applicable to due process challenges. As Defendant correctly points out, "the requirement of showing substantial prejudice and that the Government delayed to gain a tactical advantage only applies to due process claims of pre-indictment delay." ECF No. [115] at 2 (citing *United States v. Marion*, 404 U.S. 307, 323–27 (1971)). Such principles have no application in the context of a Sixth Amendment analysis of the first *Barker* factor. Defendant has shown a presumptively prejudicial delay—indeed, the delay is more than six times the presumptively prejudicial threshold. That is sufficient to satisfy the first *Barker* factor and to trigger analysis of the remaining factors.

**B. Second *Barker* Factor**

The second *Barker* factor starts with the premise that the defendant has no duty to bring herself to trial. *Barker*, 407 U.S. at 527. Instead, the Government has a "constitutional duty to make a diligent, good-faith effort" to locate and apprehend a defendant and bring that defendant to trial. *Smith v. Hooey*, 393 U.S. 374, 383 (1969). Thus, the Government "bears the burden of establishing valid reasons for the delay." *United States v. Villarreal*, 613 F.3d 1344, 1351 (11th Cir. 2010) (citing *Ingram*, 446 F.3d at 1337). "[D]ifferent weights should be assigned to different reasons" given for the delay. *Barker*, 407 U.S. at 531 (alteration added). A "neutral reason" like "negligence" "should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id*. "Deliberate attempts to delay trial to impair the defense weigh heavily against the government." *United States v. Kelly*, No. 21-10351, 2021 WL 6143554, at *1 (11th Cir. Dec. 30, 2021). And "valid reasons," such as a missing witness, justify appropriate delay. *Villarreal*, 613 F.3d at 1351. Ultimately, "the government is not required to exhaust all conceivable avenues in finding [the defendant]." *United States v. Spaulding*, 322 F. App'x 942, 946 (11th Cir. 2009) (internal quotation marks and citation omitted). But still, "the government's failure to pursue a defendant diligently *will* weigh against it, more or less heavily depending on if the government acted in good or bad faith." *Villarreal*, 613 F.3d at 1351 (emphasis added).

The parties disagree on whether the Government offers sufficient reasons for the delays in this case. Defendant argues that the evidence makes clear that the Government did not begin making diligent efforts to arrest Defendant until June 2026. ECF No. [109] at 10. Furthermore, Defendant points out that the Government made no attempts to charge Defendant for nearly five years after its investigation was complete. *Id.* at 11. Finally, the relative simplicity of this case and

the fact that the Government had all the evidence against Defendant by July 2015 support a finding of unreasonable delay. *Id.* at 11–12.

The Government does not discuss the pre-indictment delay, instead focusing on its "valid excuse"—namely, that federal agents, despite diligent efforts, were unable to apprehend Defendant. ECF No. [114] at 11. Furthermore, there is evidence that Defendant's actions were "consistent with someone seeking to avoid detection by law enforcement" and that she knew of the pending Indictment and arrest warrant. *Id.* at 13. As discussed above, the Government points to, among other things, 22 different instances of surveillance spanning December 2020 to December 2025, a July 2020 Sunbiz search, a June 2022 business records search and associated surveillance, 13 database checks between April 2020 and April 2026, social media searches in July 2023 and June 2026, a search of wage and earnings records in July 2023 and August 2025, and open-source searches between July 2024 and March 2025. ECF No. [114] at 3–4.

Defendant replies that the Government is responsible for the delay in locating and apprehending Defendant. ECF No. [115] at 3. The Government fails to justify long gaps of time in which law enforcement activity was minimal. *Id.* at 4. Moreover, the Government offers no evidence that Defendant knew she had been indicted or was subject to an arrest warrant, nor does it explain why it did not use additional information readily available to it. *Id.* at 6–8.

The Court finds that the Government has not offered a reasonable explanation for the delay here. Three reasons counsel in favor of this conclusion.

First, the Government offers no explanation for its "inordinate" five-year pre-indictment delay, which the Court may consider "to determine how heavily the post-indictment delay weighs against the government." *Kelly*, 2021 WL 6143554, at *1 (citation omitted). In *Ingram*, the Eleventh Circuit found a two-year post-indictment delay unacceptable where it was coupled with

a two-and-a-half-year pre-indictment delay between the alleged crime and the indictment. *Ingram*, 446 F.3d at 1339. Courts since then have frequently considered pre-indictment delay in assessing the reasonableness of post-indictment delay. See, e.g., *United States v. Alterma*, No. 11-20228-CR, 2018 WL 4778903, at *4 (S.D. Fla. Oct. 3, 2018); *United States v. Carswell*, No. 16-20277-CR, 2019 WL 2957148, at *5 (S.D. Fla. July 3, 2019); *United States v. Zafir*, No. 15-20189-CR, 2016 WL 11618976, at *2 (S.D. Fla. Oct. 18, 2016).

After the alleged commission of the crime in December 2014, the Government executed a search warrant on an implicated car in December 2014, executed a search warrant on Defendant's residence in January 2015, sent and received responses to grand jury subpoenas in February 2015 and May 2015, and received the final fingerprint report in July 2015. ECF Nos. [109], [114]. After July 2015, the Government does not allege taking any action until December 2019, when the Indictment was filed. ECF No. [3]. That is—at minimum—a four-and-a-half-year period of inaction, which is even more striking when considering that the investigation was complete at the start of that period *and* Defendant was in custody until October 2015 after being arrested for the charged conduct. ECF No. [115] at 8. The speedy trial analysis contemplates and provides allowances for time needed to investigate; it does not permit the Government to sit on its hands in inexplicable ways. Thus, the Court finds that the pre-indictment delay supports a finding that the post-indictment delay is unreasonable and weighs heavily against the Government. *See Ingram*, 446 F.3d at 1339 ("[O]nce the Sixth Amendment's speedy trial analysis is triggered, it is appropriate to consider inordinate pre-indictment delay in determining how heavily post-indictment delay weighs against the Government.").

Second, courts undertaking a speedy trial analysis often consider the simplicity or complexity of the case, and this case is not so complex as to warrant the delay here. Though courts

sometimes consider the complexity with the length of delay analysis, the Eleventh Circuit has instructed that "[g]reater delay is permissible in prosecuting a complex case than in prosecuting a simple one." *United States v. Dennard*, 722 F.2d 1510, 1513 (11th Cir. 1984) (citation omitted). Indeed, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. 514, 531 (1972). The Indictment and Superseding Indictment are, even by the Government's account, based on relatively straightforward crimes that are not difficult to investigate. There is no basis for asserting that the Government needed until December 2019 to investigate the offenses to build a sufficient basis for an arrest, nor is there a viable argument that additional evidence was needed post-indictment.

Third—and most importantly—the six-and-a-half-year post-indictment delay is simply too long when compared with the nature and scope of the Government's efforts. *See United States v. Neda*, 710 F. App'x 807, 811 (11th Cir. 2017) ("[T]he longer the delay, the heavier the government's negligence must be weighted." (citation omitted)); *Doggett*, 505 U.S. at 657 ("[T]he weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows.").

By the Government's own account, it did not do a single physical search for Defendant until December 2020, a year after the Indictment was filed. Following December 2020, law enforcement would regularly go a full year without surveilling Defendant's family home. ECF No. [109] at 3–5. Moreover, the Government makes no direct allegation that Defendant absconded, nor does the Government point to any meaningful evidence that Defendant was avoiding detection. Indeed, the Government notes that it "cannot point to direct evidence that conclusively shows [D]efendant's knowledge of the Indictment." ECF No. [114] at 14. Instead, the Government points to Defendant's failure to update her address with the Florida Department of Highway Safety and

Motor Vehicles, her failure to have a light bill in her name, and her lack of presence on wage and earnings reports. *Id.* at 13. None of these actions is unusual, much less evidence of knowledge of an indictment or nefarious evasion of arrest. Finally, the Government fails to acknowledge that Defendant received a W-2 and was enrolled under her own name in a federal benefits program during this time period. ECF No. [115] at 5. These facts undercut any implication from the Government that Defendant was in hiding or otherwise seeking to evade arrest.

The cases the Government cites in support of its position that its efforts were diligent are unavailing. For instance, the Government cites *United States v. Machado*, 886 F.3d 1070 (11th Cir. 2018). There, the Eleventh Circuit found no speedy trial violation in a six-year delay between indictment and arrest. *Id.* at 1082. However, in that case, the defendant left the country for most of the intervening period, which significantly limited law enforcement's ability to pursue him. *Id.* at 1081. Moreover, the court found that failures to locate the defendant "speak more to technological gaps than to [law enforcement]'s negligence." *Id.* at 1081. Here, the Government does not allege that Defendant left South Florida, and there is simply no comparison between locating someone in a different country and locating someone among one of her few known addresses.

The Court finds that the second *Barker* factor—the reason for the delay—weighs in favor of Defendant.

**C. Third *Barker* Factor**

The third *Barker* factor "assesses whether a defendant asserted his right to adjudication without unreasonable delay." *United States v. Yehling*, 456 F.3d 1236, 1244 (10th Cir. 2006) (citation omitted). Importantly, a defendant "cannot be charged with a failure to request a speedy trial" during the period before she learns of the indictment; the relevant question is the defendant's conduct after learning about the indictment. *Bagga*, 782 F.2d at 1542. Here, Defendant was

arrested in July 2026 and filed the instant motion in August 2026. That is a prompt assertion, and it weighs heavily against the Government.[1]

**D. Fourth *Barker* Factor**

In general, a defendant "must demonstrate actual prejudice to succeed on his speedy trial claim." *Villarreal*, 613 F.3d at 1355 (citation omitted). However, if the first three factors weigh heavily against the government, the defendant need not demonstrate actual prejudice to succeed. *See United States v. Register*, 182 F.3d 820, 827 (11th Cir. 1999) ("[I]n this circuit, a defendant generally must show actual prejudice unless the first three factors . . . all weigh heavily against the government." (alterations in original; internal quotation marks and citation omitted)). Where a court does undertake a prejudice analysis, "the defendant must show (1) oppressive pretrial incarceration, (2) his own anxiety and concern, or (3) the possibility that his defense was impaired because of the delay." *Machado*, 886 F.3d at 1081–82 (citing *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003)).[2]

---

[1] The Government alleges that Defendant "knew about the indictment" but concedes that it has no "direct evidence" to that effect. ECF No. [114] at 14. The Court is not persuaded by the Government's circumstantial evidence. Statements from Defendant's mother in June 2026 that she and Defendant knew of the arrest warrant do not mean they knew of the Indictment or that Defendant herself knew of the arrest warrant. *Id.* at 6–7. The arrest of a co-defendant does not impute knowledge to Defendant. And the Court has already explained that lack of earnings records and failure to update an address with the Florida Department of Highway Safety and Motor Vehicles are hardly evidence of evasive action.

[2] The United States Supreme Court has indicated that "consideration of prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 655. However, prejudice in the form of impairment of one's defense is "the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.'" *Id.* (quoting *Barker*, 407 U.S. at 532). Indeed, the Eleventh Circuit has indicated that "speculative allegations, such as general allegation of loss of witnesses and failure of memories, are insufficient to demonstrate . . . actual prejudice[.]" *United States v. Warren*, 772 F.2d 827, 836 (11th Cir. 1985). "When a defendant asserts prejudice because of the loss of evidence, he must show that the loss impaired his ability to provide a meaningful defense." *United States v. Solomon*, 686 F.2d 863, 872 (11th Cir. 1982).

Here, the Court finds that the first three *Barker* factors weigh heavily in favor of Defendant. As such, the Court is not obligated to consider the prejudice factor. However, even if the Court were to consider this factor, the Court would find it is satisfied. As Defendant points out, "the state attorney's office has destroyed its investigatory file of the incident charged in this case." ECF No. [109] at 15. That file, which reflected the state's investigation, "would have contained a memorandum detailing the reasons why the state attorney's office chose not to prosecute." *Id*. The absence of that file—destroyed as a result of the state attorney's retention policy, *id.* at 16—is prejudicial, as it easily clears the threshold of a "*possibility* that [her] defense was impaired because of the delay." *Machado*, 886 F.3d at 1081–82 (emphasis added; citation omitted).

Second, Defendant points out that the owner of the house at which law enforcement allegedly found personally identifiable information possessed by Defendant suffered a stroke in 2025 and is no longer able to testify as a witness. ECF No. [109] at 16. The Government's delay resulted in the unavailability of this potential witness, who could have testified to whether the items found "actually belonged to or were ever possessed" by Defendant. *Id*. This is not a speculative or generalized statement as to loss of witnesses. Instead, it is a specific loss of a specific witness in possession of relevant testimony. Defendant need not be absolutely certain of what a witness would say to establish prejudice.

Finally, Defendant points out that any video evidence of the conduct charged has since been destroyed, and there are likely witnesses who now cannot be found or who do not recall events from December 2014 or January 2015. *Id*. The Government's assurances that it is "attempting to locate playable copies" of relevant footage do not rectify this loss of evidence. ECF No. [114] at 16.

For all the above reasons, the Court finds that dismissal of the Indictment is warranted.[3]

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendant's Motion, **ECF No. [109]**, is **GRANTED**.
2. The Superseding Indictment, **ECF No. [7]**, is **DISMISSED**.
3. To the extent not otherwise disposed of, all pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.
4. Any outstanding conditions of pretrial release are **VACATED**, and the personal surety bond is **TERMINATED**.
5. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 13, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of record

3 Because the Court finds dismissal of the Superseding Indictment warranted on Sixth Amendment speedy trial grounds, the Court does not reach Defendant's arguments regarding Federal Rule of Criminal Procedure 48(b).